I wondered if the lawyers who were going to orally argue step would step up both and identify yourselves for the record. Good morning, Tina Solis on behalf of plaintiff Morgan Lewis. Good morning, Michael Kraler on behalf of East Chicago. Good morning. Ladies and gentlemen, I think you both understand and have been familiar with the procedure here. Fifteen minutes per side. You can save out from your fifteen minutes, Mr. Kraler, any portion you wish for a response. Thank you. I think you can safely assume that we've read your briefs. We go from Mormon to the Long Island Statute. It's like being back in law school. It did make a sense the other day, you know. Except I'd be lying if Mormon were in my law school. My law school preceded Mormon by a generation. But at least we're dealing with something that we studied in law school. Not Justice McBride. Nelson v. Miller is where we began. Anyway, tell us why the trial court was wrong. I was going to say, tell us why you haven't settled. But go ahead and ask. That's the more important question, why was the trial court wrong. With respect to the personal jurisdiction, the trial court founded under the catch-all provision of the Illinois Long Island Statute. It's the position of the city of East Chicago that jurisdiction, personal jurisdiction over this Indiana Municipal Corporation is lacking. There simply is not sufficient contact between. Well, the law firm and the city had a fiduciary relationship, didn't they? The law firm was your lawyer. They were your lawyer. Absolutely. You've got a fiduciary relationship. Absolutely. But more than that, you had some performance taking place in Chicago of more than consequential nature. You had depositions, discovery taking place in Illinois. In addition to the fact that you had all of the preparations that are attendant to litigation taking place in the offices here, in addition to the fact that you had part of the negotiations for the contract take place in Illinois, that's not dispositive. It's, you know, the initiation may be more important than the negotiation. But even the initiation is an issue of fact in that there's, who is it, Mrs. Vasquez? Is that who it was? The question was she working in a private capacity or as a friend or agent of the municipal entity. And if she was, then she would have initiated here. And I don't think you've disengaged that likelihood, at least as far as I was able. If you were going to sue them for malpractice, would anybody blink an eye if you filed your lawsuit in Cook County? No. They'd be residents of Cook County. Right. Okay. And they would be the defendant if we were going to sue them for malpractice. Right. You wouldn't need the long-arm statute. So that's really not a fair analogy, is it? I think so. But the question is, were there sufficient context here to withstand the due process under the federal and due process under the state, which as far as we know, for purposes of this issue, are in lockstep? I agree with you there. I'll try to address each of the manners you raised. First of all, I don't believe the focus is on the conduct of the law firm here in Chicago. It's on the contacts of the city of East Chicago with Illinois with regard to two phases. One is general, and the other is the specific. We're talking now about the specific. Right. The general involves the question of whether they were doing business on a steady basis to have a presence here. I don't know how much time is going to be spent on that. But at least as of this moment, that was the less impressive part. It was. And the trial court found that that wasn't the case. They weren't doing business. There was no general jurisdiction. But with respect to the specific jurisdiction, I believe that the record shows that, yes, there were activities by the lawyers here in Chicago of a substantial nature. Where do lawyers generally do their work? In their office. In the performance of their duties under their arrangement. I agree. But the focus here has to be on what were the contacts? What was the nature and the quality of the actions of the Indiana municipality, which were here in Illinois? Did the municipality sit for depositions in Illinois? No. No? Who did that? If you look at the record, the allegations are. Where was the preparation? The allegation is that there was preparation done by the lawyers in Illinois. All of these 40 cases were Indiana cases. None of them were Illinois cases. They were all Indiana cases. Supposing the contract provided there was a contractual provision, and it's not what I think you think I'm going to ask. Supposing the contract provided that we reserve the right to take all of our discovery in Illinois. If it was in the contract, what then? I don't know that it would matter. I don't either. But the other way. But from the other direction, yeah. Do you dispute that the record establishes that the city's representatives attended multiple meetings with plaintiff's attorneys at the plaintiff's Chicago office? And there are references in the pleadings and in the record here. Five meetings. Five? Five meetings. Okay. Do you dispute that? Five meetings. We've got that. Five meetings. Do you dispute that the city's representatives communicated with plaintiff's attorneys in Illinois via the telephone, the email, and fax? No. No? You don't dispute that? Well, they spoke with the lawyers, I'm sure. And do you dispute that the city sent payments to the plaintiffs in Illinois? There's no question that checks were cut. All right. They were sent to accommodate the lawyers. Wherever the lawyers wanted them sent, that's where they sent them. Okay. How about the city's representatives accessing a database over the Internet that the plaintiff's attorneys had created in Illinois? Do you dispute that? No. But they accessed it from Indiana. They didn't come here to Illinois. Five meetings in a three-year relationship involving 40 cases and generating perhaps $5 million in fee claims. And there's five meetings called here in Illinois at the lawyers' offices. Five. That's all that's referenced. The question is, is that sufficient? Well, it's a convergence of factors. It's cumulative. There's five meetings here. Yeah, but there's meetings, there's the database, which incidentally in Knauss, which is my case, generated a lot of discussion on my part, where all they did was they kept the phone here. I understand. You know? And it almost predictable. The database was created by the lawyers, maintained presumably here in Chicago, and accessed by anybody they gave the access code to, wherever they were. To the extent that representatives of the city of East St. Louis accessed that database, they did it via the Internet, whether it was maintained here in Chicago or in Philadelphia, at the main office of the law firm, or wherever, didn't really matter. I don't really see the accessing of the Internet here as being something that's significant. Well, wait a minute. I mean, do we look at things differently than we did in the days of International Shoe? I mean, I'm sure we probably do. You have Internet. You have Internet. You have GoToMeeting, where you're sitting in East Chicago, and the attorneys are sitting in Chicago, and yet you're both on big plasma screens in high definition, so that it appears like you're both in the same room, and you're having a chat about the issues in the case. Is this subtly influencing the courts when we look at the long-arm statute? Would it make any difference if you were East New Jersey rather than East Chicago? Perhaps it is influencing. I mean, don't the courts take into consideration when we take in that famous phrase, hailed into court, the ease with which it can be done now compared with, say, in the days of International Shoe? You might have had to get on a train and spend three days crossing country to hold it down. That's a couple of issues. Form nonconvenience issues do have a place in long-arm jurisdictional considerations, even though it's a matter of venue. I don't know how significant, at least at this point, but it does have some. Because, really, if you look at the older cases, the cases that you and I were involved with when we were young lawyers and had more hair and it was darker, the inconvenience, the mischief. I mean, a lot of the cases that came to the Supreme Court came out of an attempt by one party to harass the other party by selecting venue and making it as inconvenient as possible, causing them all kinds of money and extra expense because of their choice of form. That's really reduced dramatically in this day and age so that contacts may have a slightly different meaning today than it did even 25 or 30 years ago in the case of Burger King. Well, if we're talking about... There was no Internet in Burger King. I understand. If we're talking about the burden, we're talking about reason. Well, yeah, but... The AI standard is... When we're talking about a due process issue, does it have as much relevance as it did? I mean, is it as oppressive for you in 2010 as it might have been in 1985? To be hailed into an Illinois court? I don't think it's any simpler. I think that's probably about the same. Well, you know, you didn't want an Indiana law firm. Isn't that true? Well, they didn't want a law firm that was so connected with the prior political administration of East Chicago. All right. So they widened their search of where they were going. And didn't they search out... Didn't Ms. Vasquez search out an Illinois law firm? Well, what Ms. Vasquez did, because she had a prior relationship with a partner at Morgan Lewis, sent some matters to that partner's secretary and asked him to take a look to see if he was interested in pitching the bill. That's the initiation. I mean, the lawyers didn't come to her in Indiana. She alerted the lawyers that an opportunity was available to get some legal business. Yeah. And they followed through on it, as good lawyers do. Yeah. And they eventually came to Indiana and they cut a deal with the mayor in Indiana, signed an agreement, came into Indiana, was admitted to the Indiana ProHoc, you say, subject to the Indiana. I mean, this is a case of ultimately lawyers. I don't know. It's almost a little difficult to accept the notion that if you're seeking out and you actually employ a law firm from another state to do work for you, that you would never even envision being hailed into Illinois courts after you've sought them out and actually employed them. And then you did do some work on these suits in Illinois. So say you wouldn't expect to ever be hailed into Illinois. Municipalities. What counties? I think it's Lake County. Lake County, Indiana. Let's not equate purchasing goods and services with the practice of the law. I don't think anybody wants us to do that. Wouldn't Illinois have an interest in regulating its attorneys and also making sure they're paid? Because that's part of its interest in maintaining professional responsibility. This happens to be the payment aspect. But obviously if East Chicago had a beef against them, where would they go? Probably to the ARDC in Illinois. However, if there's a dispute over $3.2 million in legal fees, they might prefer to be in front of a Lake County, Indiana jury too. But I would suggest to you, Justice Gordon, I would suggest on that, does Illinois have an interest? Perhaps. I would suggest to you if we're looking at that in the context of what's reasonable here, that the state of Indiana would have an even greater interest. They admitted these lawyers. That doesn't matter. Because we know that rule from what the Supreme Court said, what's been reiterated, that under present standards, it's not a competition. You can have more than one jurisdiction being the proper venue for purposes in persona jurisdiction, under the long-arm statute. I agree with you. It's not a competition. All I'm saying is the argument about Illinois, Indiana has an argument. And I think what we have to really focus on in this is what was it that – It's not a zero-plus situation. I agree. I agree. It's what was the performance to be. They were to cooperate with their lawyers and to pay the fees. They paid the fees out of Indiana. They sent them to Illinois, but they would have sent them anywhere the lawyers wanted. They took the bills. They reviewed the bills. They took them for approval to the city council. They cut the checks and they mailed them. That's the payment of the fees. That's one aspect of their anticipated performance. The other is they were to cooperate with their lawyers. If the lawyers say, come to our office in Chicago for a meeting on five occasions and a $5 million fee, if they do, they did it to accommodate the lawyer. That's de minimis conduct. That's not sufficient to think that because your lawyer calls you in for a meeting that you're going to be hailed into court and have to defend yourself here in Illinois. On the other hand, if any of East Chicago's cases were pending in Cook County or in Illinois, you wouldn't be here, right? We would not. Okay. Why would the fact that the case is pending be that much different from discovery pending in Chicago? Well, when you say discovery pending in Chicago, they didn't take those. That wasn't done here. All they said was they prepared to take them here. They have to get the clients in to do that. In Illinois? They did prepare. They can't compel Indiana people to come to Illinois. There's no question that they prepared for these depositions in Illinois. Sure. They made their outlines and they read their documents. No, I mean actually with their clients. Didn't they do that? There were only five times. Twice they brought a consultant. On two occasions they brought municipal officials in. And on one occasion they met with the lawyers. That's five occasions they met with them. That's what they set out in their affidavits. That's what they set out in their pleadings. Did they prepare interrogatories? Document production. But that's the actions of the lawyers here in Chicago. Yes, but how do lawyers do that? Wait a minute. How do they do that? Do they do that with the help of their client or do they simply do this in a vacuum? I mean aren't we being a little bit unrealistic here? You're acting as if the lawyers are doing things without their clients. How do they get their work done without the active participation of the client? They call a client. But you say that this is unilateral activity by the attorney and consequently does not provide additional context in this jurisdiction for the client. Well, where has the client offered them space in Indiana to rent, to conduct their lawyering, so to speak? East Chicago, Indiana. Doesn't Indiana depend on the lawyers performing these tasks in their domicile? It made no difference to East Chicago, Indiana, whether they did it in Chicago, whether they rented space in Indiana, whether they found a part of it out. It would make a difference if they presented their rent as part of their cost. Well, that's not part of the contract. You know, if we could hit the restart button and go back, maybe that would be something they'd do. But that's not what was done. They left it to the lawyers to make those decisions. It seems to me, though, that if you're going to argue with this minimal contact argument of our long-arm statute, which is similar and almost identical to every long-arm statute in the country, you're going to have to stress the denial of due process because that's really the test, that somehow your right to due process has been obstructed by this lawsuit here. And since they only have to make a prima facie case, you've really got an uphill climb to argue that East Chicago is going to be denied due process by having to be hailed into Illinois courts, just as they would have the same problem, it seems to me, with Indiana if the roles were reversed. What's your best due process argument for saying that your client has been deprived of due process by this lawsuit being filed in Cook County? It's an Indiana municipal corporation. Yeah. It is involved, or this dispute involves 40 Indiana cases involving witnesses, none of whom are Illinois witnesses. They're all Indiana, all people in Indiana. So far, these are foreign nonconvenience issues. Well, they don't rise to the level of due process arguments. At least, I don't see them as such. No, and that's not your fault. I mean, that's the way the statute is written. And I suspect, I haven't looked at it, but I suspect the Indiana long-arm is probably almost identical. It has a paragraph C in it that says there's any other reason it complies with federal and state constitution. Right. And as long as you're complying with International Shoe and Burger King and hailing people into court, you've got to come up with a due process argument, it seems to me, to overcome a prima facie case, and that has to pop off the page. I'm not sure what that one would be. The problem is… But it's hard. Your burden is really rough. The problem is that the state equating its impersonum jurisdiction to the constitutional standards opens a door that's very wide. The 209C. As opposed to the old rule that you first had to show that it passes the transactional test, and then you look to due process as a means of disqualifying that test but not extending it. Could I back up and take a try at it? Well, that's what I'm asking you to do. What's your best due process argument? The state Illinois due process argument, is it fair, reasonable, and just to exercise jurisdiction over a foreign resident here in Illinois? Fair, reasonable, and just. I would submit to you that the reasonableness does bring in a bit of a concern and a bit of a balancing. I'm not saying that it's a contest between the two states, but I think within the concept of reasonableness, there is the idea of taking into account the interests of both states, Illinois and Indiana, and there is a bit of a weighing here because there's an evaluation of the sovereignty of the state of Indiana. I think you're not going to get very far playing up the governmental aspect here. I think your analogy has to fit a private litigant in Indiana and the competition that goes on there. And frankly, going all the way back to law school, I remember the McGee case, the case that said you're not violating due process if you allow an insurance company to be sued in any state where it's insured lives. That almost says anybody you owe money to. You look to that domicile. I'm not by any means making that the bright line here. But that opens the due process door very wide. And you start with the fact that you're... It almost makes it nonexistent. Almost. It almost makes it nonexistent. Almost. Than this whole lawyering. I left it to my professor to criticize, to make that comment. But in fact, it still exists. McGee is still alive. Let's say, for example, to give your case some weight, that instead of being East Chicago, a municipality with all of its legal trapments, your own legal department and so forth and anything else, you were just a little mail order operation in upstate Maine, mom and pop. And for some reason you were foolish enough to hire a law firm in the city of Chicago to do some collection work for you. And they did a couple of minor collection things. They collected a couple of debts. And you realized out of their work for you, you realized $89 in collections. And then they sue you in Cook County, alleging all kinds of stuff and asking for $100,000 for their time in trouble. I'm the main mail order. You're the mail order guy in Maine. And now you have to get on a bus because you can't afford an airplane ticket. And you have to take the Greyhound all the way to Chicago. We got a different due process issue? Of course we do. That's what the whole due process argument was about, that being hailed into this courtroom is a real impact on your ability to have due process of law because you're a mom and pop guy in upstate Maine and you're up against this enormous law firm in Chicago. But is this whole analysis... It's a case-by-case basis. It's a due process analysis based on the engineering case. You're taking that worth of a small business in Maine to see whether or not travel to Chicago is... I think the cases dealing with... That's not a due process. I think those cases dealing with third-party liability, like the Volkswagen case or the Asai case, that deals with stuff made in Japan that happens to enter the stream of commerce, travels through state... I think that's a little different than when you have a debtor relationship between two parties next door to each other, or one of the parties doing work here for the other party and having occasional meetings here and contacts here. I think that the due process burden decreases. Because that's basically what we do in this case. I think we've got an alleged debtor-creditor relationship here that's the basis of the law. This is a fee dispute. The basis of this? It's a dispute over $3 million of attorney's fees. And as I said... It's a commercial dispute. It's not a tort. It's not like I'm sitting in Milwaukee... And if you were a cop up in Maine, if I were the trial judge, I might have looked at it a little differently. So you weigh the economic impact on the business in Maine... I do what the cases under the due process clause require me to do, and the analysis that has to take place. I think an argument could be made that if you have a creditor in a jurisdiction against whom you renege for whatever reason, that you might expect to be hailed into court by that creditor wherever he's at. That, I would think, does away with it entirely. Well... It does away with this... It goes along this... It goes along this... Absolutely. It's not universally viable. It's often a commercial dispute. You need other factors. Can you give us a case one that you've relied on that actually involved a money dispute where, you know, the opposite conclusion was reached as the trial court here? Yes. There's the Victron case where a piece of equipment was sold to an Illinois resident. And they were an out-of-state company. And they were sued. And they moved to dismiss for lack of jurisdiction. The court said, well, not only did you just sell us, you had continuing obligations to perform within Illinois. Something that's not... I think I know. I think I remember something about that case. Wasn't I on your panel?  I read so many cases in the last hundred years. I don't know who was on that panel. I'm not a piece of equipment. I've been on a lot of panels. I understand. But here's my point on that. In that case, there's jurisdiction because there was anticipated, contemplated, continued warranty work in Illinois. There was training by the manufacturing company that sold the equipment to the Illinois. They were coming in Illinois and do that. None of this. But we have services rendered. Lots of services rendered for money. So I ask you, do you have something like that? But the services were rendered to an Indiana municipality. It didn't matter to East Chicago whether Morgan Lewis did it here in Chicago, whether they emailed the issues to their Singapore office or their London office and had people do it over there. It didn't matter to us. That's not what East Chicago was concerned about. We hired a law firm to come into Indiana and represent us in the Indiana courts. They became Indiana lawyers to do it. Five meetings and $5 million worth of fees? Lawyers do their work, their preparation. I mean, the bulk of everything that they would do in terms of their services is done here. I mean, that's what it's about. And money. So I'm just saying, you've got these services that were rendered and you've got the dispute over the money for those services. I would respectfully disagree with the court that where Morgan Lewis did its business is what goes into the analysis here for purposes of whether an Indiana municipal corporation is going to have to come in and spend Indiana taxpayer money to defend a lawsuit where Indiana law is going to apply here. I don't think that the focus... Indiana substantive law. Right. I don't see that coming through any other cases. But I don't... The focus, and I think the case is pretty clear on this, is that you look at the conduct, the nature and quality, as was cited in the Knauss case and in the Rollins case, the nature and quality of the defendant's actions in the forum state, in Illinois. And what we have here is payment of bills from Indiana, where the check happens to hit in Illinois. The real action is opening the envelope and depositing it. That's all Morgan Lewis. What did the defendant do in the forum state? It sent checks here in payment, at least for a while, and it came here or sent representatives here, presumably at their lawyer's request, on five occasions in connection with 40 cases. I don't think Knauss helps you. In fact, I suppose if you read it closely, it may hurt you because there was, in Knauss, the circumstances of the defendant being involved in Chicago were so remote, it hung only on the transitory fact that oppressed the state passed through Illinois. And yet, I recall, struggling with that decision because of the due process. But that's what we have. Boundary. But she does have that because there was no contact in that case between the defendant and any of the other players in the case. They acted purely as intermediaries without any assertion of any interest of their own, and it was all transitory. In this particular case, you have going to a set of Illinois lawyers because you need out-of-state lawyers, and meeting with them, negotiating with them, initiating the conversation, and helping with the presence of the client, the lawyers in their preparation effective in Illinois. I don't think it's purely an election by the attorneys to do their preparation where they have their own libraries and secretaries and the setup to work. I think that that's not the kind of choice made where there is really a free and unfettered option. I have one other case I wanted to mention. Go ahead, and then you have to sum up because we need to move on. Right, that's the... You'll get the last word, however. All right, I'll wait for the last word. Okay. Ms. Salas. Could have saved yourself a lot of time if you had filed your lawsuit in Lake County. Indiana. May it please the court, counsel. East Chicago is a non-resident municipal corporation, but unfortunately for East Chicago, non-resident municipal corporations need to pay their bills, just like everybody else. Well, let's save that for a jury, okay? Yeah. This is a situation in which East Chicago deliberately sought out an Illinois law firm. It wanted a law firm outside of Indiana and unaffiliated with Illinois. Supposing it sought it out in Indiana. Supposing there was a meeting, by chance there was a convention in East Chicago or in some other more appropriate location of American Bar Associations and the lawyer for East Chicago met up with the local Chicago lawyer and he said, hey, you know, we have a deal here. And it was entered into there, okay? And the lawyer spent all of his time in Indiana litigating, not settling, and would take that position there and meet with, and take the South Shore to East Chicago eastward instead of westward from East Chicago, you know, would he still be of the same position? Don't get the impression that this case is a shoe-in. It's very close. I understand. Because I still can't wonder, you know, how far is it from downtown Chicago to the courthouse in Lake County, Indiana? Approximately 40 miles. You had the answer at the tip of your tongue. Okay. Well, you know, and generally speaking, we prefer that people sue people where the defendant's located. It wouldn't have been a great inconvenience for you to go to Lake County, Indiana. On the expressway, it's probably, what, a 40-minute drive? Well, then how is it inconvenient for the other side? No. I'm just looking at it from the perspective of what we traditionally say, sue the defendant where the defendant is. Don't force the defendant to go chasing clear across the country or even clear across state lines in order to be hailed into a Cook County court when it would have been just as convenient for you to file your lawsuit. And I wasn't that certain that municipalities are in every respect no different than individuals or is there still some deference given to a municipality? I seem to detect the tone in the cases that there's still some vestigial distinction. Right. I don't believe that there is. When you look at the Illinois long-arm statute, the legislature, if it had intended to treat non-resident municipal corporations any different than corporations in general or any other party, it had the option to put that sort of language in the statute and exempt. Let's say it's a small suburban community in Southern California, as far away from here as you can possibly get without being in the ocean. And the amount in dispute is $2,000 and you file here in Cook County. Yes, Your Honor. Same issues? Same problem? Or do we analyze it differently? Well, it is a case-by-case analysis, but let's talk about this. If that small little suburban village and the far reaches of California had the exact... Vestigial for $2,000. If they had as many contacts as each Chicago had here and repeatedly reached into Illinois through faxes and e-mails and trips here and accessing databases... Now we're back to modern communications as a factor to take into consideration. Well, the faxes and cross-communications have been previously discounted, and Gordon v. Toe is an example of that. However, Gordon v. Toe precedes the expansion of the Long Arm Statute, but by how much? Well, it does precede it, Your Honor, and I think that when you look at a federal due process analysis here that you have to, and an Illinois due process analysis like you have to, you have to look at the totality of the circumstances and all the contacts that each Chicago had with Illinois from the very first initial contact by an each Chicago councilwoman, Christine Vasquez, who reached into Illinois, contacted Mr. Jackson's secretary, and specifically... On the telephone? It was via e-mail, Your Honor, but yes, a communication... Does that make a difference? E-mail as opposed to telephone? No, I don't think it does. When you have as many contacts as you have here, and you have not only contacts via e-mail and telephone calls and faxes, you also have a physical presence by each Chicago... Oh, come on now. Let's talk about that a little bit. You know, the continuous of doing business doesn't refer to the specific case. It refers to the business of the defendant generally being centered or being transacted in Illinois. The most extreme of those cases is that case that involves, I guess, that garage on Russell Road, which is in Wisconsin, but because it fixes cars that travel that road and enter Illinois, you know, that it's doing business in Illinois. But that, frankly, is an anomalous case. You have to show that the city of each Chicago is really a... a contractor who centers... who does business in Illinois, maybe in attracting tourists, and I don't think East Chicago is going to make that claim. At the risk of taking judicial notice where I'm not supposed to, I don't think I'd be inclined to say that they're recruiting, you know, tourist business from Chicago, you know? Well, Your Honor, we can talk about general jurisdiction in a little bit, but I want to focus right now on... But I don't think general... I think you have got a long way to go to establish general jurisdiction through physical presence as reflected in a course of doing business. I think you're better off sticking to paragraph C here. The point that I want to make, though, Your Honor, is Council for East Chicago wants to focus the panel's attention on only these five trips that the client made into Illinois. Only these five trips. Yeah, he's arguing it's de minimis. It's not de minimis, though. And the reason it's not de minimis is it's ignoring all of... all of the rest of East Chicago's contacts, and they're continual reaching in throughout a two-and-a-half-year relationship in which they initiated that relationship. They wanted an Illinois law firm. And it went from the very beginning all the way through that relationship. And let's not forget, East Chicago derived significant benefits from its relationship with Morgan Lewis. Morgan Lewis achieved victory in virtually all of those 40 cases for East Chicago. Were those cases litigated, all of them, or settled? Some of each, Your Honor, as is with general litigation. Sometimes they're settled, sometimes they're fully litigated. I think you probably benefit more from settlement than from litigation because a settlement may look very well if it occurred in Illinois for whatever it's worth. But I think what we have to focus on is the East Chicago's contacts in Illinois. It certainly had five different types of contacts with Illinois over that two-and-a-half-year period. First of all, it had the visits to work and assist in the defense of these 40 lawsuits. Second of all, it had the various types of correspondence. Well, your opponent says there were five. Are there more? I'm talking about types of contacts, Your Honor. I think he's referring to the five separate visits from East Chicago representatives who came into the offices of Morgan Lewis here in Chicago and helped prepare for depositions, consulted with experts, things like that. Now, are the rest of those visits non-East Chicago employees or agents? Because your client would then categorize that as part of the elective choice of where the lawyers wanted to perform their service. All we've pointed out in our briefs are the five meetings, but there's more than the meetings, and that's my point. There are also five different types of contacts that East Chicago reached into Illinois and had, and those were the visits that we've just talked about, the various types of correspondence, be it telephone calls, faxes, emails, and as you can imagine, the 40 ongoing cases, East Chicago was calling, faxing, emailing the attorneys in Chicago almost every day, sometimes multiple times a day. It was this continual reaching in, and so that's another type of contact. How does that create, what's the logic of that insofar as how it would create an expectancy? How does that happen? Because East Chicago was purposefully availing themselves of the benefits and protections of Illinois by doing this. Oh, do you really mean that? Yes, I do, Your Honor. I really do. Simply because they hired a Chicago law firm? Yes, they hired a Chicago law firm. So somehow that's going to shield them from the benefits of Illinois law? Your Honor, the touchstone... Isn't that a bit of a stretch? I don't think it's a bit of a stretch in this case. I suppose one could make the argument that they're counting on the fact that these lawyers will toe the line because of the discipline that would ensue in Illinois if there were a malpractice. And I'm wondering about that too when you appear in another state. Will the AIDC penalize you for showing up late in an Indiana courtroom? I'm not sure that... Will the appellate court in Illinois be nastier to your lawyers than they would be if they were Indiana judges? Well, Your Honor, to your point, I do think that if East Chicago were to lodge a complaint for some reason against Mark and Lewis, I think you're right. I think they would do it here in Illinois. And therefore, I think the converse would be true as well. And this is the Sabados case. In that situation, they did not find personal jurisdiction over the defendant. But in that case, and that was a First District case, they said in personal service contracts, like we have here, that if a person travels outside their state to seek assistance, precisely what East Chicago did here, they traveled into Illinois to seek the assistance of Mark and Lewis, that if they were going to lodge a complaint against that service provider, they should be expected to travel back to the state of service. That's what we have here. And in the Auto Tech case, now that was a case for... that was a New York defendant, and the New York defendant's only contacts with Illinois were its faxes and mail orders for the product and sending defective products back to Illinois for repair. But the First District Court found sufficient personal jurisdiction over that defendant. Here we have a lot more. And in the Auto Tech case, the court was very specific in pointing out that an Illinois company, its residents, its workers, certainly have the right to have their dispute over fees for services or products rendered heard here in Illinois. And that's what Mark and Lewis chose to do. They had a right to be here, and that's the decision that they made. Any further questions for Ms. Waller? Thank you, Counsel. Thank you. Ms. Waller, you have a final brief word. Respond to your due process question. Well, I think that's the... I mean, and I think you recognize... you're an excellent lawyer. You recognize that you are climbing a steep cliff here. That due process issue and the way it's been framed by... Can I give it one more try? Of course. You could argue that in one of two ways, either by being self-deprecating... In the Canals case, citing the Burger King case, it gave the underlying rationale for the due process requirement of minimum contacts is to make it foreseeable for a defendant that he's going to be held into court. Here, what we have in inviting an Indiana town,  where the defendant, the city's contemplated performance of its end of this deal, was clearly in Indiana, where this defendant municipality's actual contacts or performance in Illinois, the foreign state, are really de minimis. We could talk about zillions of factors and zillions of emails. They mentioned five meetings over a two-and-a-half-year period where there was $5 million in fees generated in 40 cases pending in another jurisdiction. So I guess the question then comes, the due process argument is, is it reasonable? Was it foreseeable to this town in Indiana to spend Indiana taxpayer money that they were going to have to come into Cook County if they got in a dispute with their lawyers? Which leads me to my last comment, which has to do with the Code of Professional Responsibility. Justice Gordon has mentioned a number of times about the ARDC. In the record, in this case, are numerous motions for admission of Illinois lawyers into Indiana, Morgan Lewis Lawyers, Pro Hoc visa. Each and every one of those motions contains a representation and commitment by the Illinois lawyer to be bound by the Code of Professional Responsibility  So if there's a complaint to be filed over the conduct of these lawyers now admitted as Indiana lawyers representing an Indiana municipality in Indiana cases, that dispute is likely to be brought into the Indiana ARDC. If the ARDC chose to step in, do they have the jurisdiction to do so for misconduct by a Chicago lawyer in a foreign jurisdiction? I don't know the answer to that question. My guess is that if you have an Illinois license, the ARDC pretty much has as much jurisdiction as you do. They have a long-term statute. They got the Supreme Court. They might still have an interest. You're bound by our canons whether you're here in Chicago or whether you're in California. Whether you're up in Maine. If that's true, then, then we have an intangible premise from which to infer that they have an interest in controlling the conduct of their attorneys wherever they may be. I think that they would probably defer to the sovereign state of Indiana. Undoubtedly. If the infraction were both won equally. I don't know. I'm guessing what the ARDC would do in a situation like that. Probably the same thing the Indiana ARDC would do. I just have one question about the contact of the city of East Chicago. Is there something like inaccurate about what counsel just said that the city of East Chicago was pretty much in constant contact with its lawyers or not? Were they not really contacting their lawyers or were they like most clients that kind of, hey, can you tell me about this? Can you answer this? What do you need here? I mean, was that not going on? Are we missing something? Is she misrepresenting that there was contact on a kind of a regular basis to the lawyers at the firm in Chicago? Was that made up? I am certain that there were communications back between the client and lawyers. And wasn't that kind of on a regular basis? To run up $5 million worth of fees, you've got to be talking a lot. Or doing something a lot. So the fact is that can you divorce that contact from Illinois when it's actually coming into Illinois on the phone, emails, we're talking to our lawyers. How do you separate that and act as if it wasn't really occurring? Believe me, I'm not saying that there's not communication between the Morgan Lewis lawyers and the city of East Chicago. I would suggest to you that the bulk of the time that we spent here in Chicago were doing the things that cost a lot of money, and that is preparing for discovery. But this is an Illinois law firm. So you're availing yourself on a regular basis of their services. And I mean, I don't know how to act as if it didn't occur that way. I'm not, I don't mean to suggest that there were communications. Those aren't even minimum contacts with factors that we look at. No, I don't think you do. Where does the breach occur? This is a contract action, is it not? It is a contract action. In Indiana or in Illinois? You know, I've been back in law school today so many times. The contract doesn't enter into in Indiana. Were they supposed to deposit their fees in a post office box in Indiana, or were they supposed to deliver their fees to Illinois? The performance by East Chicago. First of all, the contract was executed in Indiana. I understand. The performance was in Indiana. Is it fair to approve by the city council to approve any more invoices in Indiana? The invoice is with all municipalities. They come in, they get looked at, they get submitted to the governing body for approval, and then a warrant is issued and a check follows. Is it the failure to approve and authorize the payment of more fees, if that's the case, that it occurred in the statement here? I don't know how any alleged breach would have occurred here in Illinois. It depends where the place of payment is supposed to be. And otherwise, it falls under the category of a disclaimer of the contract giving rise to an action under contract law before it's actually breached. But you might have Illinois as the place where the breach occurs. I don't pretend to know the answers. I really wasn't prepared to address that, so I don't really know. But it would certainly be a place of breach would be a contract for purposes of burglaries. In terms of creating expectancy, what could be more vital than the place of breach? Councils, thank you both. The case will be taken under advisement. Well argued.